Kevin J. TIERNEY et al.

v.

The DEPARTMENT OF HUMAN SERVICES.

No. 2000–342–M.P.

Supreme Court of Rhode Island.

March 28, 2002.

R. Kevin Horan, Pawtucket, for Plaintiff.

Deborah R. Buffi, for Defendant.

Present: WILLIAMS, C.J.,
LEDERBERG, BOURCIER,
FLANDERS, and GOLDBERG, JJ.

## OPINION

GOLDBERG, Justice.

This case came before the Supreme Court pursuant to a petition for certiorari issued on November 20, 2000, in accordance with the Administrative Procedures Act, G.L.1956 § 42–35–16. The defendant, the Rhode Island Department of Human Services (DHS or agency), sought review of a judgment of the Superior Court overturning a decision by a DHS hearing officer (hearing officer) that denied assistance benefits to Mary Tierney for the cost of nursing home care during the last months of her life. For the reasons set forth below, we grant the petition and quash the judgment of the Superior Court.

### Facts and Travel

Mary Tierney (Mary), having spent several months in a nursing home, died on August 3, 1998. On March 2, 1998, Kevin J. Tierney (Kevin or plaintiff), the court-appointed guardian for his mother, applied to DHS on Mary's behalf seeking benefits under the Medical Assistance Program (Medicaid) to help offset the costs of her nursing home care. Medicaid is a federally funded program created pursuant to Title XIX of the Federal Social Security Act and is administered by DHS to "furnish medical assistance to disabled individuals who are without funding to meet medical costs." After reviewing Kevin's application for Medicaid in April 1998, DHS denied assistance having concluded that Mary's available assets exceeded the $4,000 eligibility limits set forth in DHS policy. The evidence disclosed that Mary had $27,108.24 in joint bank accounts; six accounts that were jointly held with Kevin and four accounts held jointly with Kevin and Mary's sister, Helen L. Markely (Helen or plaintiff). It has been stipulated by the parties that these accounts included a right of survivorship for each of the named payees. Pursuant to regulations promulgated in accordance with both state and federal law, DHS determined that the funds in these accounts were presumed to be Mary's and that Kevin and Helen had been added to the accounts for purposes of convenience.[1]

Kevin, on behalf of his mother, appealed that determination and, on June 24, 1998, an administrative hearing was conducted by DHS. An examination of the hearing

---

1. Rhode Island Department of Human Services Manual Rule 0382.15.10.10 states:
   "Whenever the applicant is a joint account holder who has unrestricted access to the funds in the account, ALL of the funds in the account are PRESUMED to be the resources of the applicant or deemor. The applicant or deemor will be offered the opportunity to submit evidence in rebuttal of this presumption. A successful rebuttal will result in finding that the funds (or a portion of the funds) in the joint account are not owned by the applicant or the deemor and, therefore, are not the resources of the applicant."

transcript, and indeed the record as a whole, makes it abundantly clear that Mary raised her son to be a forthright and honest man. Kevin candidly admitted that the accounts in question had been held by Mary and her deceased husband, and that after her husband's death, Mary arranged all of the accounts so that they were held jointly with Kevin and Helen. Kevin forthrightly admitted that, although he "would use the money sometimes if [he purchased] a car, or some major expense" when he was told to use it, he "basically stayed away from [the accounts] because [the money] was hers." The hearing officer issued a decision on August 6, 1998, three days after Mary's death, and upheld the agency's determination of ineligibility. The hearing officer concluded that Mary and her deceased husband had been the source of the funds, that Mary had unrestricted access to the accounts, and that Kevin had failed to rebut the presumption created by DHS regulations, that the funds belonged to Mary.[2] The hearing officer concluded that this Court's holding in *Robinson v. Delfino*, 710 A.2d 154 (R.I. 1998) was not relevant to his conclusions because *Robinson* related to the rights of surviving joint account holders accruing after the death of the decedent in whose name the funds were deposited. The

hearing officer found that Mary had unrestricted access to the funds in the accounts and, therefore, the funds were Mary's alone and she was thus ineligible for Medicaid assistance. Notably, three days before the issuance of the agency decision, Mary had died.

Kevin and Helen appealed the agency decision to the Superior Court pursuant to § 42–35–15[3] of the general laws. On July 10, 2000, the Superior Court hearing justice issued a bench decision and reversed the agency determination of Mary's ineligibility for Medicaid assistance. The hearing justice found that Mary's death, on August 3, 1998, was conclusive on the issue of survivorship and, pursuant to this Court's opinion in *Robinson*, the funds in the joint accounts were the property of Kevin and Helen and could not be considered by the agency in a determination of eligibility. We disagree.

### Standard of Review

■■■ Our review of administrative decisions, including those of DHS, is prescribed by § 42–35–15, and that review "is confined to a determination of whether there is any legally competent evidence to support the agency's decision," *Environmental Scientific Corp. v. Durfee*, 621 A.2d 200, 208 (R.I.1993) (citing *Barrington*

2. Rhode Island Department of Human Services Manual Rule 0382.15.10.30 states in pertinent part: "The determination of accessibility depends on the LEGAL STRUCTURE of the account. Where an applicant is a joint holder of a bank account and is legally able to withdraw the funds from that account, (s)he is considered to have UNRESTRICTED ACCESS to the funds."

3. General Laws 1956 § 42–35–15(g) provides: "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if

substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
(1) In violation of constitutional or statutory provisions;
(2) In excess of the statutory authority of the agency;
(3) Made upon unlawful procedure;
(4) Affected by other error or law;
(5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."

*School Committee v. Rhode Island State Labor Relations Board,* 608 A.2d 1126, 1138 (R.I.1992)), and further, whether the decision was otherwise occasioned by error of law. *Star Enterprises v. DelBarone,* 746 A.2d 692, 695 (R.I.2000). This Court does not substitute its judgment for that of the agency concerning the credibility of witnesses or the weight of the evidence concerning questions of fact. *Technic, Inc. v. Rhode Island Department of Employment and Training,* 669 A.2d 1156, 1158 (R.I.1996). The findings of fact of the administrative hearing officer that Mary and her deceased husband were the source of the funds, that Mary had unrestricted access to those funds and that Helen and Kevin were added to the accounts for Mary's convenience, are all factual determinations that are not reviewable by this Court.

### Issues Presented

On appeal, plaintiffs argued, as they did to the Superior Court, that our recent decisions pertaining to joint bank accounts with the right of survivorship have altered the legal landscape such that the DHS hearing officer committed an error of law when he declared that Mary was ineligible for Medicaid assistance because she retained unrestricted access to these accounts. The plaintiffs maintained that a *Robinson* analysis was triggered because Mary died before the hearing officer made the final decision and, therefore, the funds in the jointly held accounts should not be included in the eligibility determination by DHS. Further, plaintiffs challenged the finding that Kevin and Helen were added to the accounts merely for purposes of convenience. Neither contention withstands scrutiny under a proper analysis of the law.

### Discussion

■ The plaintiffs' first assertion, that this Court's holding in *Robinson* dictated Mary's eligibility for Medicaid assistance because Mary had died at the time of the DHS decision, is not supported by *Robinson* nor any other case law relative to joint bank accounts. In *Robinson,* we held that, absent evidence of fraud, undue influence, duress, or lack of mental capacity, the establishment of a joint bank account with survivorship rights "is conclusive evidence of the intention to transfer to the survivor an immediate *in praesenti* joint beneficial possessory ownership right in the balance of the account remaining *after the death of the depositor[.]*" *Robinson,* 710 A.2d at 161. (Emphasis added.) However, during the life of both parties, a joint bank account merely "gives rise to a *rebuttable* presumption of an intent to make a gift of a joint interest therein, albeit the establishment of a joint account is one that 'create[s] *immediate possessory* as well as survivorship rights' in both joint-account parties." *Mitchell v. Mitchell,* 756 A.2d 179, 182 (R.I.2000) (quoting *Robinson,* 710 A.2d at 160). Therefore, *Robinson* is relevant only to the extent that the establishment of a joint account conclusively determines the present intention of the owner to transfer to the surviving account holders the ownership of the account upon his or her death. During the life of the owner, however, a presumption exists that the funds are jointly owned. These holdings have no relevance to the issues presented to the hearing officer or this Court. The hearing officer was not asked to determine the question of who owned the account *after* Mary's death; rather, the issue was whether, during her lifetime Mary had unrestricted access to the funds in the accounts to pay the expenses of her last illness. The nursing home costs were accrued during Mary's lifetime and were payable before her death. The hearing officer factually determined that at the

time the costs were incurred, Mary had unrestricted access to the accounts in question and, therefore, under DHS policy she was ineligible for Medicaid assistance. The fact that Mary had died in August, before the final decision of the hearing officer, is of no moment to the issue of Mary's eligibility for Medicaid assistance in March. The DHS regulations are not concerned with whether another individual may have a right to the funds *after* the death of the applicant, but whether the funds were accessible during the course of Mary's life. Since there is no dispute that Mary had unrestricted access to the funds during her lifetime, *Robinson* has no relevance to the issues before the Court. Accordingly, we are satisfied that the trial justice committed an error of law when he overturned the decision of the hearing officer based on our holding in *Robinson* and its progeny.

The plaintiffs next attack the conclusion that Kevin and Helen's names were added to the accounts merely for convenience. We note that this is a challenge to a factual finding of the hearing officer and is not reviewable. Further, when assessing Mary's right to the funds, the issue of why Kevin and Helen's names were added to the accounts is not relevant; the determinative factor is whether Mary had unrestricted access to the funds during her lifetime. Significantly, in *Bielecki v. Boissel*, 715 A.2d 571 (R.I.1998), this Court acknowledged the continuing validity of joint bank accounts created for convenience purposes only, and in *Mitchell*, we recognized that the question of whether a name was added to a joint account for the convenience of the original owner was a relevant factor in determining the rights of the people whose names were *added* to the account. We have never held that the question of convenience determines the ownership rights of the original owner. This Court has never been asked to decide whether the original owner is divested of ownership by simply adding the names of other persons to an account. At best, Kevin and Helen enjoyed a rebuttable presumption of joint ownership with Mary, who retained unrestricted access to the assets in these accounts, whether Kevin and Helen were added for convenience or otherwise. There is no evidence that Mary was in any way precluded from accessing these accounts for her use and benefit during the course of her life. Finally, the factors employed in determining whether the funds in a joint bank account should be viewed as belonging entirely to the applicant is a matter of agency policy and is not based on state law. Here, the agency determined that Kevin and Helen were indeed added for convenience purposes only and this finding of fact will not be disturbed when there is substantial evidence in the record to support such a conclusion.[4]

Accordingly, the petition for certiorari is granted. The judgment of the Superior Court is quashed and the papers in this case shall be remanded to the Superior Court with our decision endorsed thereon.

---

**4.** DHS policy recognizes the possibility that funds in a joint bank account may not be legally accessible to all joint bank account holders. Rhode Island Department of Human Services Manual Rule 0382.15.10.30 states in pertinent part: "It is possible to have ownership interest in a bank account but have RESTRICTED ACCESS to the funds. * * * When it is clearly established that all funds in an account are legally accessible to the applicant only in the event of the death of the co-owner, the applicant's access to the funds is restricted and the funds are not a countable resource."