[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
This case is an appeal from a final decision issued by the Rhode Island Department of Human Services (Department). The plaintiff, Brian L. Cavanaugh, Jr. (Cavanaugh), pro se, asks this Court to reverse the Department's decision denying his application for child care services for his young daughter because, he maintains, the agency improperly determined him to be ineligible to receive such benefits. He seeks review of the final decision pursuant to the provisions of the Administrative Procedures Act, G.L. 1956 § 42-35-15.
In addition, Cavanaugh requests declaratory relief pursuant to the Uniform Declaratory Judgments Act, G.L. 1956 § 9-30-2. Specifically, he alleges that the Rules and Regulations (the Rules) promulgated by the Department discriminate against individuals who have to pay child support because such payments are not deducted from annual gross income calculations, whereas child support payments that are received from another source are added to gross income. Furthermore, he alleges that the Rules discriminate in favor of foster parents because they exclude foster care payments from annual gross income. Jurisdiction in this Court is pursuant to G.L. § 42-35-15 and G.L. § 9-30-1.
 Facts/Travel
The facts in this case are undisputed. On September 13, 2004, Cavanaugh filed an application with the Department seeking child care assistance. In his application, he stated that he is a divorced father who cares for his now five-year old daughter. At the time, he was employed as a full-time seasonal worker at a golf club where he earned $600 per week. He also received $72.00 per week in child support from his daughter's mother and paid $90.00 in weekly child support payments to an ex-wife.
On October 22, 2004, the Department denied Cavanaugh's application finding that his income exceeded the maximum eligibility standard for a child care subsidy. It specifically found that his "countable gross yearly income of $39,943.76 is more than $28,102.92, which is the highest amount allowed under the CCAP [Child Care Assistance Program] rules for your family size (DHS 0850.02.05(1) and 0850.05.01)." Thereafter, Cavanaugh requested and received a hearing to review the agency's decision. On March 16, 2005, the Department conducted the hearing and, after reviewing all of the evidence, affirmed the agency's initial decision.
Two people testified at the hearing — a representative from the Department and Cavanaugh. The representative testified that the agency annualizes an applicant's annual gross wages by verifying the amount that the applicant earned during the previous four weeks of employment and then projecting that amount out for an entire year. Transcript at 3. Thus, in this case, the agency annualized Cavanaugh's wages by multiplying his weekly $600 wages by fifty-two weeks. Id. It then calculated how much Cavanaugh received in annual child support ($3,744.00) and added that amount to his gross wages to reach an annual gross income figure of $34,943.76. It determined that Cavanaugh's annual gross income exceeded $28,102.92, the maximum allowable income that a family of two may earn before being disqualified from receiving child care assistance, and rejected his application. Id. at 2.
Cavanaugh then testified. He disputed the Department's figures and methodology. He testified that his annual gross income had been overstated because his employment was seasonal. Id. at 5. He maintained that his W-2 form from the previous year more accurately stated his annual income as $22,766.68. Id. at 8. Cavanaugh further testified that he had been laid-off in December and did not expect to return to work for another couple of weeks, and that while he was unemployed, he collected only $299.00 in weekly unemployment benefits. Id. at 5. He then argued that the $72.00 weekly child support payments that he received for his daughter should have been offset by the weekly child support payments of $90.00 that he made for his three children from a previous marriage. Id. at 8.
In short, Cavanaugh maintained that the Department should have taken into account the seasonal nature of his employment, as well as offset his child support payments, and that had it done so, his adjusted annual gross income would have qualified him for child care services. Id. at 7. He further argued that in addition to being income qualified to receive child care services, he also was categorically qualified under the Department's rules because he was receiving medical assistance from the State. Id. The hearing concluded at the close of Cavanaugh's testimony.
On March 17, 2004, the hearing officer issued a written decision denying Cavanaugh's application for child care services. Cavanaugh timely appealed.
 Standard of Review
The Superior Court's review of an appeal of an agency decision is governed by § 42-35-15(g). Section 42-35-15(g) provides:
 The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error or law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
In reviewing an administrative agency decision pursuant to §42-35-15, this Court acts in the same manner as an appellate court with a limited scope of review. Mine Safety Appliances v.Berry, 620 A.2d 1255, 1259 (R.I. 1993). As a result, great deference must be given to an agency's final decision. R.I.Temps, Inc. v. Dep't of Labor Training, 749 A.2d 1121, 1125
(R.I. 2000). When a justice of the Superior Court reviews an agency decision, that review is confined "to an examination of the certified record to determine if there is any legally competent evidence therein to support the agency's decision."Johnston Ambulatory Surgical Assocs., Ltd. v. Nolan,755 A.2d 799, 805 (R.I. 2000) (emphasis added) (quoting Barrington Sch.Comm. v. R.I. State Labor Relations Bd., 608 A.2d 1126, 1138
(R.I. 1992)).
It is axiomatic that "`the Superior Court may not, on questions of fact, substitute its judgment for that of the agency whose action is under review,' . . . even in a case in which the court `might be inclined to view the evidence differently and draw inferences different from those of the agency.'" JohnstonAmbulatory Surgical Assocs., 755 A.2d at 805 (internal citations omitted). Furthermore, this Court may not "substitute its judgment for that of the agency concerning the credibility of witnesses or the weight of the evidence concerning questions of fact." Tierney v. Dep't of Human Servs., 793 A.2d 210, 213
(R.I. 2002) (citing Technic, Inc. v. R.I. Dep't of Labor Training, 669 A.2d 1156, 1158 (R.I. 1996)).
Consequently, the Superior Court will "reverse factual conclusions of administrative agencies only when they are totally devoid of competent evidentiary support in the record." Milardov. Coastal Res. Mgmt. Council, 434 A.2d 266, 272 (R.I. 1971). It must be remembered, however, that questions of law "are not binding upon the court and may be reviewed to determine what the law is and its applicability to the facts." Narragansett WireCo. v. Norberg, 118 R.I. 596, 607, 376 A.2d 1, 6 (1977).
 Review of the Department's Decision
In his appeal, Cavanaugh again challenges the methodology that the Department applied in order to calculate his annual gross income. In addition, he asserts that the hearing officer erred in failing to find him categorically qualified to receive child care assistance when it knew that he was qualified for medical assistance. Finally, Cavanaugh seeks this Court to declare that the Department's Rules are unconstitutional.
It is a well-recognized doctrine of administrative law that deference is accorded to an administrative agency when it interprets a statute whose administration and enforcement has been entrusted to the agency. Pawtucket Power Associates LimitedPartnership v. City of Pawtucket, 622 A.2d 452, 456 (R.I. 1993). Such deference is accorded to an agency's interpretation even when other permissible interpretations could be applied. Id.
(citing Young v. Community Nutrition Institute, 476 U.S. 974,981 (1986)). Therefore, this Court will defer to the Department's interpretation of its governing statutes while keeping in mind that "it is a well-known maxim of statutory interpretation that this Court `will not construe a statute to reach an absurd [or unintended] result.'" Hargreaves v. Jack, 750 A.2d 430, 435
(R.I. 2000) (quoting Kaya v. Partington, 681 A.2d 256, 261
(R.I. 1996)).
General Laws 1956 § 40-5.1-17 of the Rhode Island Family Independence Assistance Act affords child care assistance for needy families. Specifically, § 40-5.1-17(a) mandates the Department to "provide appropriate child care to every parent who requires child care in order to meet the work requirements in §40-5.1-9 and to all other families with incomes at or below . . . two hundred twenty-five percent (225%) of the federal poverty line." Section 40-5.1-9 requires the Department to develop individual employment plans for parents of families who are entitled to receive cash assistance.
In order to carry out the provisions of the Family Independence Assistance Act, the Legislature directed the Department to promulgate Rules and Regulations. § 40-5.1-36. Pursuant to that directive, the Department devised a "Code of Rules" and established the "Starting RIte Child Care Program." The Child Care Assistance Program (CCAP) designates the Department "as the agency responsible for STATE programs subsidizing child care services provided to Family Independence Program (FIP) beneficiaries and income eligible working families." Section 0850.01.02. FIP is defined as "the State program, authorized by R.I.G.L. 40-5.1 et. seq., that provides cash assistance and support to families who meet certain requirements." Section 0850.01.03. The same section further provides that "FIP beneficiaries are categorically eligible for fully-subsidized CCAP services if they meet the requirements established in Sections 0850.02.02-0850.02.04." Id.
Section 0850.02 recognizes that:
 There are two avenues for qualifying for payment of child care expenses through the CCAP: categorical eligibility and income eligibility. Family Independence Program (FIP) beneficiaries, including Adolescent Self-Sufficiency Collaborative (ASSC) participants, who meet all the general requirements established in this rule, are categorically eligible to receive for CCAP authorized child care services. Working families and ASSC participants who are not FIP beneficiaries may be income eligible for the CCAP if they meet the requirements set forth in Section 0850.02.05.
"Categorically eligible" is defined as:
 eligibility for the CCAP [that] has been conferred, by either State law or DHS policy, based on receipt of, or participation in, a particular public benefit/program. Both FIP cash assistance and ASSC [Adolescent Self-Sufficiency Collaborative] program participants receiving FIP cash assistance are categorically eligible for the CCAP if they have met all other general requirements and established a need for services. Section 0850.02
Having set out the above provisions, this Court will now address Cavanaugh's appellate contentions.
(a) Categorical eligibility
Cavanaugh claims that because he was receiving medical assistance, he was eligible for the CCAP "based on receipt of, or participation in, a particular public benefit/program." Section 0850.02. Although the hearing officer did not specifically address this issue in his opinion, this Court concludes that when he considered only income eligibility in his decision, the hearing officer implicitly rejected Cavanaugh's categorical eligibility argument.
It is clear to this Court that Cavanaugh was not categorically eligible. Section 40-5.1-17(a) mandates the Department to provide child care assistance only to those individuals "who require
child care in order to meet the work requirements in § 40-5.19-[,]" and to families "whose incomes are at or below two hundred twenty-five percent (225%) of the federal poverty line." Section 0850.02.04D(3)(a) provides that "FIP beneficiaries whose FIP cash assistance is scheduled to close, and who are requesting child care assistance due to employment, will have their CCAP eligibility determined using income eligibility rules."
In viewing the Department's Rules as a whole, it is clear to this Court that to be categorically eligible, an individual must be receiving cash assistance and support from the state, as well as participating in an individual employment plan that the Department developed. In the instant case, there is absolutely no evidence in the record to indicate that Cavanaugh was receiving any cash assistance under FIP or was participating in an employment plan. Consequently, this Court concludes that the Department's not finding that Cavanaugh was categorically eligible was not clearly erroneous.
(b) Income Eligibility
This Court will now address Cavanaugh's contention that he was income eligible to receive child care assistance. Cavanaugh asserts that the hearing officer erred in calculating his annual gross income. First, he claims that the hearing officer erred in projecting his weekly wage over fifty-two weeks rather than calculating the actual figures for the weeks of anticipated work. Second, he maintains that the child support payments that he made to support children from a previous marriage should have been deducted from his annual gross income.
In section 0850.02, the Department defines income as
 money, goods or services available to the financial unit used to calculate eligibility for the CCAP. For the purposes of the CCAP, countable income includes, but is not limited to, any of the following:
 * Monetary compensation for services, including gross wages, salary, commissions, and any work-based fees, stipends, tips or bonuses; . . .
 * Child support payments; . . .
However, certain benefits, including foster care payments that are made by the Rhode Island Department for Children, Youth and Families (DCYF), are excluded from calculations of income. Id.
The Rules also provide that the [a]uthorization periods shall not exceed twelve (12) months in one (1) certification period" and that "[i]ncome eligible families are subject to recertifi-cation [sic] every six (6) months, or more frequently, depending on the period of CCAP authorized services." Section 0850.02.03C(9)(a)-(b). Thus, any calculation of an applicant's current annual gross income is effective only for the period of authorization, which ordinarily lasts no more than six months. At that point, the applicant must be recertified. Naturally, such recertification would take into account any change in the applicant's circumstances, such as new employment.
In his written decision, the hearing officer specifically found that when Cavanaugh submitted his application, there was no dispute as to either his weekly earnings of $600 per week from his seasonal employment or the fact that he received $72 per week in child support. Hearing officer's Decision at 2-3. The hearing officer further found that the Department "used pay stubs provided by the appellant and verification from the agency's computer matching system to verify the child support income."Id. at 3. The hearing officer then concluded that:
 One of the stated purposes of the CCAP is to provide subsidies for child care services to low income families. One must derive from this statement that subsidies are provided for the periods in which low income families are working, or, the periods during which they are receiving income. Therefore, the determination of their (annualized) income must be based on the periods of time during which they are working. Periods during which low-income families are not working are not subject to eligibility for benefits. I interpret the intent of the policy to mean that annualized income projections must be based solely on the time frames that work is occurring. Hearing officer's decision at 4.
Consistent with this conclusion, the hearing officer further found that additional income from other sources, such as unemployment benefits or short-term employment during an unemployment period, would be impossible to calculate. Id.
Indeed, he observed that in this case, had he added Cavanaugh's unemployment benefits to his other income, Cavanaugh still would have been ineligible to receive child care assistance because his income would have exceeded the statutorily mandated maximum of $28,102.93 for a family of his size. Id.
The hearing officer further concluded that:
 [W]ith regard to this case, I find the methodology used by the agency, to annualize earnings based on current employed periods, to be the correct method of determination of annual income for comparison with the eligibility standards contained in the policy. Based on the factual evidence presented in this case, I find the appellant's income exceeds the maximum eligibility standard for a childcare subsidy. The resulting determination must be that eligibility for the CCAP does not exist due to excess income. Id.
After reviewing the record in the light of the limited scope of review of agency decisions, this Court does not find that the hearing officer's calculations or conclusions are clearly erroneous. The Family Independence Assistance Act requires the State to provide child care assistance only to families whose income is at or below 225% of the federal poverty level. The hearing officer concluded that the statutory scheme at issue in this case is concerned only with current income and calculated Cavanaugh's current annual gross income by annualizing his current income. This did not constitute error.
Cavanaugh also contends that the child support payments that he made to children from a previous marriage should have been deducted from his annual gross income. However, considering that Cavanaugh's annual gross wages, standing alone, actually exceed the statutory maximum, Cavanaugh's rights have not been prejudiced. The Court has considered this aspect of Cavanagh's claim in light of the requirements of the DHS Policy Manual which prohibit consideration of payments made by an applicant for rent, taxes and other expenses which include the payment of child support and concludes that the refusal to deduct such payments from the income of Cavanagh is not discriminatory or unlawful.
(c) Declaratory Relief
Cavanaugh asks this Court to declare that the Department's Rules discriminate unconstitutionally against certain families. Specifically, he asserts that the Rules disparately impact families who receive child care payments, as opposed to those families who receive foster care payments from DCYF, because the former payments are included as part of annual gross income, while the latter payments are excluded.
Chapter 30 of title 9, the Uniform Declaratory Judgments Act (Declaratory Act), grants the Superior Court "power to declare rights, status, and other legal relations whether or not relief is or could be claimed." The Declaratory Act also provides that the Superior Court may grant additional affirmative relief "based on the declaratory judgment `whenever necessary or proper' provided subsequent `supplementary proceedings' are brought pursuant thereto." Capital Properties, Inc. v. State,749 A.2d 1069, 1080 (R.I. 1999) (citing §§ 9-30-8, 9-30-12; Sousa v.Langlois, 97 R.I. 196, 199, 196 A.2d 838, 841 (1964)).
Section 9-30-2 provides, in part, that:
 "any person . . . whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder."
The purpose of the Declaratory Act is "to facilitate the termination of controversies." Capital Properties, Inc.,749 A.2d at 1080. The decision to issue a declaratory judgment lies within the trial justice's broad discretion. Cruz v. Wausau Ins.Co., 866 A.2d 1237, 1240 (R.I. 2005); Sullivan v. Chafee,703 A.2d 748, 751 (R.I. 1997) (citing Woonsocket Teachers' GuildLocal Union 951 v. Woonsocket Sch. Comm., 694 A.2d 727, 729
(R.I. 1997)). Section 9-30-12 provides that the Declaratory Act should be "liberally construed and administered." See alsoTaylor v. Marshall, 119 R.I. 171, 180, 376 A.2d 712, 716-17
(1977) (stating existence of alternate methods of relief, including administrative, do not preclude declaratory judgment).
Mindful that a trial court has broad discretion to issue a declaratory judgment, this Court declines to grant Cavanaugh's request for declaratory relief. As noted above, Cavanaugh's substantial rights were not prejudiced by the inclusion of the $72 weekly child support benefits that he received because that calculation is required to assess eligibility, and because his annual gross income already exceeded the statutory maximum. In light of the foregoing conclusions by this Court, a declaration regarding the constitutionality of the Department's Rules would not facilitate the termination of this controversy.
 CONCLUSION
After review of the entire record, this Court finds the Department's decision is supported by substantial evidence, made upon proper procedure, and within the Department's authority. Moreover, the Department's decision is not clearly erroneous, in violation of constitutional or statutory provisions, arbitrary or capricious or characterized by abuse of discretion, or affected by error of law. Furthermore, substantial rights of the Petitioner have not been prejudiced. Accordingly, this Court affirms the Department's decision to deny child care assistance to Cavanaugh. Counsel shall submit the appropriate judgment for entry.