DECISION
Before this Court is an appeal by the Divorce Resource Center of Rhode Island (hereinafter "the Center"). The Center appeals from a May 21, 2009 decision (hereinafter "Decision") of the Director of Labor and Training (hereinafter "DLT"), awarding Gladys Moran (hereinafter "Moran") unpaid wages in her claim pursuant to G.L. 1956 § 28-14-4 . Jurisdiction is pursuant to G.L. 1956 § 42-35-15.
 Facts and Travel
A full recitation of the facts and travel of this matter occurring prior to the May 4, 2009 hearing can be found in the March 16, 2009 decision rendered by this Court. See
PC-2008-0017. Briefly, on January 8, 2007, Moran filed a claim with the Rhode Island Department of Labor and Training's Labor Standards Division, alleging that she was a former employee of the Center and that she was entitled to unpaid wages for the period of March 13, 2006 to October 25, 2006. The Center's place of business during the time in question was an office suite located at 1220 Park Avenue, Cranston, Rhode Island.
The matter came before the Department of Labor and Training hearing officer Mary Ellen McQueeney-Lally (hereinafter "Hearing Officer"), on September 25, 2007 *Page 2 
and November 27, 2007. Those hearings consisted of testimony from Ms. Moran and the owner and operator of the Center, Lori Grover (hereinafter Grover). Subsequently on December 4, 2007, the Hearing Officer issued a written decision in which she concluded that Ms. Moran was an employee of the Center and that her claim against the Center pursuant to § 28-14-4 was meritorious. She awarded her unpaid wages in the amount of $7,092.90.
The Center appealed that 2007 decision. After a careful review of the evidence in the record, this Court remanded the matter to the Hearing Officer for further findings of fact. In short, the matter was remanded because the Hearing Officer failed to articulate specific reasons as to why she found Ms. Moran to be an employee of the Center as defined in § 28-14-1. In an effort to furnish guidance to the Hearing Officer on remand, this Court enumerated factors found in § 220 of the Restatement (Second) of Agency to be utilized in specifically determining if Ms. Moran was, in fact, an employee. Those factors follow:
 1. The extent of control which, by agreement, the Center or Ms. Grover could exercise over the details of Ms. Moran's work;
 2. Whether or not Ms. Moran was engaged in a distinct occupation or business;
 3. Whether the type of work performed by Ms. Moran was of a type usually done under the direction of the employer or by a specialist without supervision;
 4. The skill required in the particular occupation performed by Ms. Moran;
 5. Whether the Center or Ms. Moran supplied the instrumentalities, tools, and the place of work for Ms. Moran, the person doing the work; *Page 3 
 6. The length of time for which Ms. Moran was employed by the Center;
 7. The method of payment, whether by the time or by the job;
 8. Whether or not the work performed by Ms. Moran was part of the regular business of the Center;
 9. Whether or not the parties believed they were creating an employer-employee relationship; and
 10. Whether the Center was or was not in business.
The matter came before the same Hearing Officer again on May 4, 2009. She instructed the parties that the substance of the second hearing was to be "focused on the [factors from the Restatement] that the judge requested." (Tr. at 3.) The hearing began with testimony from Grover. She testified that prior to Moran working at the Center, Grover fully informed her that this would not be a conventional paid position, and that she considered Moran to be a 1099 independent contractor and never an employee. (Tr. at 8-11.) The money she did furnish to Moran from time to time, Grover claimed, was "a token of [her] appreciation." (Tr. at 13.) She also informed the Hearing Officer that both she and Moran performed duties for another company, Complete Mortgage, during the dates in question at 1220 Park Avenue. (Tr. at 19.)
Later in her testimony, Grover denied that Moran had any hand in obtaining or advising clients for the Center or that she had any set work schedule. (Tr. at 17.) In fact, Grover claimed that she did not keep track of when Moran came and went from the Park Avenue suite. (Tr. at 22.) She recalled that "[Moran] had a key to come and go as she pleased[] . . . and [without asking Grover] would "leave to go pick up her kids from school." (Tr. at 23.) Although she admitted that Moran did answer the phones for the Center and make "[a]n occasional copy," she never provided any specific instructions as *Page 4 
to the completion of those tasks. (Tr. at 16, 21.) Furthermore, Grover claimed that the Center never provided Moran with any training, never paid any worker's compensation for Moran and was never listed on the Center's tax rolls as an employee. (Tr. at 18.)
Moran was next to testify and began by articulating her duties for the Center. (Tr. at 35.) She claimed that she performed the following tasks: "answer[ed] phones, [took] messages, greet[ed] clients, photocop[ied], prepare[d] packets for the Divorce Resource Center, [took] care of the calendar, coordinate[d] appointments between [attorneys] and the Center's clients." (Tr. at 35.) Prior to joining the Center, Moran claimed that Grover offered her a position and that she accepted the position with the belief that "after [two months] Grover was going to compensate [her] for all the wages." (Tr. at 36.) Moran testified that she was making $14 per hour before she took the job at the Center and in her words, "I'm not going to leave my paying job to go work for nothing." Id.
Later she testified that if she were to miss a day of work for a doctor's appointment, she "always checked with Grover first." (Tr. at 37.) Further, all of her tasks, she explained, were at the direction and for the benefit of Grover and the Center. (Tr. at 38.) For example, whenever a client at the Center needed legal counsel, at Grover's behest, Moran would "coordinate [an] appointment between the client and [an attorney]" Id. Moran added that all the equipment she utilized at the 1220 Park Avenue suite was property of the Center. (Tr. at 39.) Finally, she testified that she always believed that she was an employee of the Center, a licensed LLC engaged in the business of providing services to clients seeking divorce, and never anticipated being an independent contractor. (Tr. at 42-43.) *Page 5 
On cross-examination by counsel for the Center, Moran indicated that in June of 2006, she did sign a paper indicating that she agreed to work for Complete Mortgage, but that she only signed the paper to get a commission on a pending mortgage. (Tr. at 45.) At the time, she was not a loan officer authorized to do so, and, in fact, was being trained as one by Grover "after hours[] [and] [a]fter her work for the Divorce Resource Center was complete." (Tr. at 45-46.) She also testified on cross-examination that although Grover had not gotten into the specifics of what she was to be compensated, she assured Moran "[Moran] was going to be paid more than $14 per hour." (Tr. at 48.)
Moran's testimony concluded the May 4, 2009 hearing, and on May 21, 2009, the Hearing Officer issued a formal written Decision. At the outset of her written Decision, she noted that in Rhode Island, the "test [as to] whether or a person is an independent contractor is based on the employer's right or power to exercise control over the method and means of performing the work and not merely the exercise of actual control." (Decision at 2.) Once again, the Hearing Officer found Moran to be an employee of the Center and that all work performed at the Center was "done under the direction of an employer and not done by a specialist without supervision." (Tr. at 3.) Based upon the testimony of both Grover and Moran, she found that "Grover had the power or right to control Ms. Moran's method and means of performing work." (Decision at 5.) The Hearing Officer postured: "it [is] plausible that Ms. Moran performed well and did not need instructions or suggestions on how to improve her performance."Id. The Hearing Officer also found Moran's testimony concerning her having to seek permission to leave the office, as "more credible" than Grover's testimony claiming that she had no oversight or concern as to Moran's coming and going. (Decision at 4.) *Page 6 
The Hearing Officer added that although there was no set salary agreement, the "type of work Ms. Moran performed was payable by time and not by the job." Id. The work performed, opined the Hearing Officer, was "part of the regular business of [the Center]."Id. Regardless of what Grover believed as to the dynamic of the relationship, the Hearing Officer concluded that in light of "the totality of factors . . . an employee-employer relationship was created." Id. Based upon that conclusion, the Hearing Officer held that Moran was entitled to wages pursuant to § 28-14-4 in the amount of $7,092.90.[1] The Center appealed.
 Standard of Review
Pursuant to § 42-35-15, "[a]ny person, . . . who has exhausted all administrative remedies available to him or her within [an] agency, and who is aggrieved by a final order in a contested case is entitled to judicial review" by the Superior Court. The Court "may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error or law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." Sec. 42-35-15. *Page 7 
"In reviewing an agency's decision, this Court is limited to an examination of the certified record in deciding whether the agency's decision is supported by substantial evidence." Center forBehavioral Health, Rhode Island, Inc. v. Barros,710 A.2d 680, 684 (R.I. 1998). Substantial evidence has been defined as "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means an amount more than a scintilla but less than a preponderance." NewportShipyard. Inc. v. Rhode Island Commission for Human Rights,673 A.2d 457, 459 (R.I. 1996).
"Questions of law determined by the administrative agency are not binding upon [the Superior Court] and may be freely reviewed to determine the relevant law and its applicability to the facts presented in the record." State Dep't of EnvironmentalMgmt. v. State Labor Relations Bd., 799 A.2d 274, 277 (R.I. 2002) (citing Carmody v. Rhode Island Conflict of Interest Comm'n,509 A.2d 453, 458 (R.I. 1986)). Although this Court affords the factual findings of an administrative agency great deference, questions of law — including statutory interpretation — are reviewedde novo. In re Advisory Opinion to the Governor,732 A.2d 55, 60 (R.I. 1999) (citing City of East Providence v.Public Utilities Comm'n, 566 A.2d 1305, 1307 (R.I. 1989)).
This Court "require[s] that factual determinations be made" by the agency; there must be "an ample decisional demonstration of the grounds upon which an ultimate conclusion is predicated."Hooper v. Goldstein,104 R.I. 32, 44, 241 A.2d 809, 815 (1968). "[I]f a[n] [agency] fails to disclose the basic findings upon which its ultimate findings are premised, [this Court] will neither search the record for supporting evidence nor will [it] decide . . . what is proper in the circumstances. Instead, [this Court] will *Page 8 
either order a hearing de novo or remand in order to afford the [agency] an opportunity to clarify and complete its decision." Id. at 44, 241 A.2d at 815-816.
 Analysis
On appeal, the Center argues that the Hearing Officer's Decision warrants reversal because it is arbitrary and capricious in light of the relevant facts and law governing such determinations. According to the Center, as Ms. Moran was not an "employee" of the Center, she is not entitled to compensation for unpaid wages pursuant to § 28-14-4, the statute that allows "an employee [who] separates or is separated from the payroll of an employer" to file a claim for unpaid wages or compensation. It also alleges that the Hearing Officer miscalculated the amount of wages owed to Appellant.
In opposition to the Center's appeal, the DLT urges this Court to uphold the Hearing Officer's Decision. DLT insists that the Decision was supported by reliable, probative, and substantial evidence in the record. Moreover DLT insists that by tailoring the hearing and her decision to focus on the elements enumerated in the Restatement, she directly comported with the guidance provided in this Court's previous decision remanding the matter.
Section 28-14-4 reads, in pertinent part: "Whenever an employee separates or is separated from the payroll of an employer, the unpaid wages or compensation of the employee shall become due on the next regular payday and payable at the usual place of payment." As this Court held in this matter, the issue in resolving this matter is whether or not Moran was, in fact, an employee of the Center and not an independent contractor.
"It is generally held that it is impossible to determine the relationship of employer and employee by any hard and fast rule."Sormanti v. Marsor Jewelery Co., Inc., 83 R.I. 438, *Page 9 
441, 118 A.2d 339, 341 (1955). Although there is no definitive answer, "the test [as to] whether a person is [an employee or] an independent contractor is based on the employer's right or power to exercise control over the method and means of performing the work and not merely the exercise of actual control."Absi v. State Dep't of Admin., 785 A.2d 554, 556 (R.I. 2001) (quoting Pasetti v. Brusa,81 R.I. 88, 91, 98 A.2d 833, 834 (1953)). Although our Supreme Court has not enumerated all of the facts that must exist in order for a reviewing court to conclude that one party has the right or power to control the work of an "employee," it has found the following to be of particular importance: the provisions of the employment contract between the parties, if any; the method of payment; the option as to time in doing the work; and the giving of instructions by the employer. Henry v. Mondillo,49 R.I. 261, 142 A.2d 230, 232 (1928).
In specific applications of the "right or power to control" test, our Supreme Court has found that an individual is laboring as an "independent contractor" and not as an "employee" where he or she contracts to do a piece of work according to his or her own methods, without being subject to the control of his or her employer except as to the results of the work. See Lake v. Bennett,41 R.I. 154, 156, 103 A. 145 (1918). An individual has also been considered an "independent contractor" when he or she hires his or her own labor and furnishes his or her own materials and tools for the work. See O'Connor v. Narragansett Electric Co.,54 R.I. 317, 172 A. 889, 891 (1934). Furthermore, if the person takes only occasional jobs, considers himself or herself to be an "independent contractor," is paid in cash, and arranges his or her transportation to the work site and hours of work, he or she can also be regarded as an independent contractor. SeeLaliberte v. Salum, 503 A.2d 510, 513 (R.I. 1986). *Page 10 
Because this determination is so fact specific, the matter was remanded in order for the Hearing Officer to provide specific factual reasons as to why Moran was or was not an employee of the Center. After a review of the most recent Decision, this Court finds that the Hearing Officer's conclusion that Moran was an employee of the Center was reasonable and supported by probative and substantial evidence in the record. In her Decision, she cited numerous examples of Grover's "right or power to exercise control" over Moran, one being her finding that Moran had to seek permission to leave the office. See contra Lake, 41 R.I. at 156, 103 A. at 145. Also, she cited that the clerical work performed by Moran was part of the regular business of the Center, was done at Grover's direction, and always on equipment owned by Grover. SeeO'Connor 54 R.I. at 318 172 A. at 891 (citing DreamlandBall Room, Inc. v. Shapiro, 36 F.2d 354 (7th
Cir. 1929)). The fact that Moran may have collected fees from work done for Complete Mortgage, in the eyes of the Hearing Officer did not make her an independent contractor as she found Moran's testimony credible in insisting that all work on mortgages was completed after the Center had ceased business for the day.
It is well settled that "[reviewing] [c]ourt[s] [will] not substitute [their] judgment for that of the agency concerning the credibility of witnesses or the weight of evidence concerning questions of fact." Tierney v. Dep't of Human Services,793 A.2d 210, 213 (R.I. 2002) (citing Technic Inc. v. R.I. Dep'tof Employment and Training, 669 A.2d 1156, 1158 (R.I. 1996)). Yet that is essentially what the Center is asking this Court to do. On appeal it focuses on the fact that because she received a commission on behalf of Complete Mortgage that Moran should be considered an independent contractor. Also, it maintains that since Moran never made a claim for wages while she was employed or *Page 11 
ever discussed the parameters of her fringe benefits, that it was erroneous for the Hearing Officer to conclude that Moran believed that there was an employer-employee relationship existing between herself and Grover.
As this Court mentioned, the Hearing Officer addressed the Complete Mortgage earnings by concluding it to be irrelevant, as she believed all work pertaining to it was conducted after hours when the Center's work day was complete. Furthermore, while it is true that benefits and the like were never discussed, that fact alone is not dispositive of Moran's belief that she was an employee of the Center. This Court agrees with the Hearing Officer's conclusion that in the totality of the circumstances — including her belief that she would be paid, her seeking permission to leave the office, and her overall duties that supported the mission of the Center — Moran considered herself its employee.
In sum, this Court finds that the findings of the Hearing Officer were based on probative and substantial record evidence. Her Decision is based on credibility determinations and her judgment as to how much weight to apply to the evidence and testimony presented. As this Court did not have an opportunity to view any of the testimony presented, it would be impermissible to second-guess the Hearing Officer's "impressions as [s]he . . . observe[d] [Grover and Moran] [,] listened to [their] testimony [and] . . . determine[ed] . . .what to accept and what to disregard[,] . . . what . . . [to] believe[] and disbelieve[]." Environmental ScientificCorp. v. Durfee, 621 A.2d 200, 206 (R.I. 1993). Accordingly, this Court finds that the Hearing Officer's determination that Moran was an employee of the Center, and not an independent contractor as reasonable and based upon substantial and probative evidence found in the record. *Page 12 
Appellant also claims that the Hearing Officer's calculation of damages was clearly erroneous in light of the facts in the record. Appellant claims that Moran is entitled to wages only from May through October 2006, and not March 2006 through October 2006 as the Hearing Officer determined. In support of this allegation it cites to the "Non-Payment of Wages Complaint Form," in which Moran, on the bottom of that form claimed that her period of lost wages was "5/13/06-10/25/06." Because of that, Appellant alleges that Moran is estopped from obtaining wages from any time prior to May 13, 2006.
This Court disagrees, instead regarding Moran's indication of May and not March of 2006 as an obvious "typographical error that does not affect [this Court's] analysis." Ferraraex. Rel. Com. of Massachusetts Dept. of Social Services v.Marra, 823 A.2d 1134, 1136 n. 2 (R.I. 2003). Appellants are correct in alleging that Moran, on her lost wage form, claimed wages from May through October 2006, but on that same form, she said she was employed without pay from March 2006. Moreover, multiple times in her testimony, she claimed that she had worked at the Center since March of 2006 and had not received any pay, except for the $710. More importantly, in her Decision, the Hearing Officer found that Moran was employed from March 2006 through October 2006, and that she had only been paid $710 dollars. Taking that sum into consideration, that amount was adjusted from the amount of wages owed to Moran for her uncompensated employment. After a review of the record, this Court does not find that the Hearing Officer's calculation regarding the amount of wages owed to Moran was "devoid of competent evidentiary support in the record." Milardo v.Coastal Res. Mgmt. *Page 13 Council, 434 A.2d 266, 272 (R.I. 1981). Accordingly, this Court upholds the Hearing Officer's calculation of wages ordering Moran be awarded $7,092.90
 Conclusion
This Court has reviewed the entire record before it. Having done so, this Court is satisfied that the Hearing Officer's Decision is supported by the reliable, probative, and substantial evidence and is not an abuse of discretion or clearly erroneous. Substantial rights of Appellant have not been prejudiced. Counsel shall submit the appropriate judgment for entry.
[1] The Hearing Officer had previously concluded that the unpaid wages would be calculated using the minimum hourly wage for the period in question, $7.10. The Hearing Officer found that Ms. Moran worked thirty-five hours per week at the Center for the period of March 13, 2006 through October 25, 2006. Multiplying the prevailing minimum wage by the number of days worked, taking due account of holidays, the Hearing Officer found that Ms. Moran was entitled to unpaid wages of $7,802.90. However, as Ms. Moran produced a 1099 form indicating that she had been paid $710 for this period of time, her unpaid wages were reduced to $7,092.90. *Page 1