DECISION
Before this Court is the appeal of Sheila A. Jordan from a decision of the Rhode Island Department of Human Services denying her medical assistance. Jurisdiction is pursuant to G.L. 1956 § 42-35-15.
I. Facts and Travel
Sheila A. Jordan appeals the decision of the Rhode Island Department of Human Services ("DHS"), denying her medical assistance benefits on the basis of Mrs. Jordan's transfer of resources to her son. After a formal hearing held on April 4, 2006, a DHS hearing officer heard Mrs. Jordan's petition for reversal of the DHS decision. Representatives for Mrs. Jordan and DHS participated in examination and cross-examination of witnesses and submitted documentary evidence.
At the hearing, Mrs. Jordan submitted documentation that her Medicaid application was received on January 11, 2006 and granted on January 27, 2006, when she was found "eligible for Medical Assistance under the rules of the. . . long term care program beginning January 1, 2006." (Tr. at 2.) However, Mrs. Jordan's long-term care *Page 2 
application was "denied because of the transfer of one-half of the applicant's property to her son on July 1 [2005]" by her quitclaim deed. (Tr. at 3.)
At the hearing, Mrs. Jordan's social-worker, Ms. Mary Marr, testified for the agency. She testified that Mrs. Jordan's transfer of property "created a period of ineligibility through June 30, 2006 according to DHS Manual section .0384." (Tr. at 4.) She testified that the agency's transfer penalty was $85,000, determined by half the value of the real estate, $170,000. (Tr. at 5.)
Mrs. Jordan's son, Gary Jordan, testified before the hearing officer that he lives with his wife at 192 Spring Street, and which they have owned for over 30 years. His parents had lived in a house next door (Tr. at 8) at 190 Spring Street. Sheila Jordan's husband (Gary's father) passed away in 1983. Gary Jordan testified that during July 2005, his mother took his father's name off of the 190 Spring Street title and added Gary Jordan's name to the properties by quitclaim deed. (Id.) Mr. Jordan also testified that his mother was physically healthy and "really self-sufficient," "cleaning the house, wash windows, uh vacuum, do her dishes," cooking, raking, doing yard work. (Tr. At 9) However, she was "very forgetful and losing things," which Mr. Jordan attributed to her age. (Id.)
At the hearing, the Jordans submitted a letter from Attorney John P. Toscano, who prepared the 2005 conveyance. The letter "hits the key points which is that there was never a discussion about transferring this house for reasons to qualify for Medical Assistance. . . ." (Tr. at 13.) The letter asserts that Mrs. Jordan "was concerned that the property standing in her name alone, would result in her estate being probated, which she *Page 3 
wished to avoid" and there "was no discussion [of avoiding] nursing home costs." (App. 4).
Mrs. Jordan's long-term supervisor, Ms. Lynne Bert ("Ms. Bert"), also testified. Ms. Bert testified that a letter from S.R. Avery Funeral Home indicated a prepaid funeral payment was received in December 16, 2005. (Tr. at 10.) Ms. Bert testified that Mrs. Jordan had been hospitalized for "visual hallucinations" on September 8, 2005, and went to the nursing home on September 16, 2005. (Id.)
DHS rendered its decision on February 10, 2005 (the "DHS Decision"). The decision concludes by finding that Mrs. Jordan did not provide sufficient evidence to prove the July 2005 transfer was exclusively for some purpose other than to qualify for Medical Assistance. (Dec. 7-8.) Mrs. Jordan's request for relief was denied. (Dec. at 8.)
Mrs. Jordan appealed DHS's decision on the grounds that the hearing officer erred in finding that the transfer was not for some purpose other than gaining medical assistance. Mrs. Jordan's appeal is currently before this Court.
II. Standard of Review
Rhode Island General Laws 1956 § 42-35-15 (g) governs the Superior Court's scope of review for an appeal of a final agency decision. Section 15(g) provides in relevant part:
 . . .The Court should not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of Mrs. Jordan have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions; *Page 4 
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary and capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
This section precludes a reviewing court from substituting its judgment for that of the agency with respect to the credibility of the witnesses or the weight of the evidence as to questions of fact.Ctr. For Behavioral Health v. Barros, 710 A.2d 680, 684 (R.I. 1998). The Superior Court's review is confined to "an examination of the certified record to determine if there is any legally competent evidence therein to support the agency's decision," and it must uphold the Board's decision if based on sufficient and competent evidence in the record.Johnston Ambulatory Surgical Assocs., Ltd. v. Nolan, 755 A.2d 799, 805
(R.I. 2000) (quoting Barrington Sch. Comm. v. R.I. State Labor RelationsBd., 608 A.2d 1126, 1138 (R.I. 1992)). However, where an agency's findings are "completely devoid of competent evidentiary support in the record," or by the reasonable inferences that can be drawn from them, then the findings made by the agency are not controlling upon this Court. Milardo v. Coastal Resources Management Council, 434 A.2d 266,270 (R.I. 1981); Millerick v. Fascio, 120 R.I. 9, 384 A.2d 601 (1978).
III. Arguments
Mrs. Jordan asserts that the agency's decision against her was made by a non-attorney based on his erroneous interpretation of law, not facts, and is therefore reviewable de novo by the Superior Court. Mrs. Jordan argues that DHS erred in its decision to deny her medical assistance benefits based on her property transfer because *Page 5 
she "presented convincing evidence — that was unrefuted by DHS — showing her July 2005 conveyance of a one-half interest with rights of survivorship was for the sole purpose to pass her property to her only child without the need for probate." (Appellant's Br. at 8.) Mrs. Jordan asserts that she met her burden of proof with Attorney Toscano's letter, which shows "the manner in which the deed was constructed." Further, "[t]here was no discussion affecting the conveyance of the real estate in a manner to protect the real estate from exposure to nursing home costs." (Id.) Mrs. Jordan contends that Attorney Toscano's conclusion that the transfer was done for probate purposes was buttressed by her son's testimony. Gary Jordan testified that "prior to July 2005 [the date of transfer] he had not discussed the addition of his name to his mother's property. He stated that his mother decided in July 2005 to put his name on the property deed." (Mrs. Jordan's Br. at 8.) Further, Mrs. Jordan contends that the hearing officer made an error of law when he "arbitrarily and erroneously imposed the obligation on Mrs. Jordan of a specific evidentiary requirement — proof of a traumatic onset of disability — found neither in the underlying federal statute the federal agency, the federal agency transmittal, or in DHS's regulations, as prerequisite to proving that Mrs. Jordan's conveyance to Gary was for reasons other than to qualify for Medicaid." (Mrs. Jordan's Br. at 9.)
DHS contends that Mrs. Jordan uses an improper standard by arguing that the agency decision was affected by error of law made by a non-attorney hearing officer. DHS asserts that the hearing officer was correct in upholding the agency decision in its application of DHS regulations, noting that Attorney Toscano's letter was "issued subsequent to Mrs. Jordan's denial for Medical Assistance." (DHS Br. at 16.) Further, DHS argues that because the factor of a traumatic onset of disability or blindness after the *Page 6 
transfer of an asset was "the only potential possibility to rebut the presumption by the Plaintiff based upon the facts and evidence," the hearing officer was correct in "analyz[ing] and weigh[ing] the facts in light of this method of rebutting the presumption." (DHS Br. at 14.)
IV. Analysis A. The medical assistance framework.
Medicaid is a federally-assisted, state-administered program that provides "a nationwide program of medical assistance for low income families and individuals." Wilder v. Virginia Hospital Association,496 U.S. 498, 501 (1990); West Virginia University Hospital, Inc. v.Casey, 885 F.2d 11, 15 (3d Cir.1989). Medicaid is provided to families with dependent children and to aged, blind, or disabled persons whose income and resources are insufficient to meet the costs of necessary medical services. 42 U.S.C. § 1396(1). Any State which participates in Medicaid must extend medical benefits to all persons who are "categorically needy," or receiving supplemental security income (S.S.I.) benefits under subchapter XVI (Supplemental Security Income For The Aged, Blind, and Disabled). See 42 U.S.C. § 1396a(a)(10)(A). The State may also provide medical assistance under Medicaid for the "medically needy," or persons "who have insufficient income and resources to meet the costs of necessary medical and remedial care and services." 42 U.S.C. § 1396a(a)(10)(C)(i).
42 U.S.C. § 1396p(c)(1) sets the general rule that an individual becomes ineligible to receive Medicaid benefits if an institutionalized individual or his or her spouse disposes of assets for less than fair market value ("FMV") during the 36 months (the *Page 7 
`look back') before the date the individual has applied for medical assistance under the State plan. In 42 U.S.C. § 1396p(c)(2), exceptions are delineated for certain transfers. One exception provided in Section 1396p(c)(2) stipulates
 [a]n individual shall not be ineligible for medical assistance by reason of paragraph (1) [transfers of assets less than fair market value] to the extent that. . . (C) a satisfactory showing is made to the State (in accordance with regulations promulgated by the Secretary) that. . . (ii) the assets were transferred exclusively for a purpose other than to qualify for medical assistance. . . . (Emphasis added.)
On the federal level, the Medicaid program is administered through the Secretary of the Department of Health and Human Services through the Health Care Financing Administration ("HCFA"). Although federal regulations interpreting subsection (C) of 42 U.S.C. § 1396p(c)(2) have not been promulgated, guidelines have been issued that interpret the transfer of assets provision of the Medicaid Act. Section 3258.10 C2, entitled "Transfers Exclusively for a Purpose Other Than to Qualify for Medicaid," provides guidance on that which constitutes a "satisfactory showing" under 42 U.S.C. § 1396p(c)(2):
 Verbal assurances that the individual considering Medicaid when the asset was disposed of are not sufficient. Rather, convincing evidence must be presented as to the specific purpose for which the asset was transferred. (Emphasis added.)
Under Rhode Island law, the Rhode Island Department of Human Services Code of Rules ("DHS Regulations") governs eligibility for Medical Assistance and parallels the federal regulations. Similar to42 U.S.C. § 1396(p)(c)(1), DHS Regulation § 0384.10 provides that
 . . .[u]nless exempt, transfers of assets (income and resources) made for less than fair market value by an *Page 8 
institutionalized individual. . . are subject to a penalty if the transfer was made. . . [f]or transfers of assets made prior to February 8, 2006 within thirty six (36) months immediately prior to or anytime after the date the individual was both institutionalized AND applied for MA. . . ."
Section 0384.20 of the DHS Regulations sets the following period of ineligibility:
 The penalty for an otherwise eligible institutionalized individual who transfers assets for less than fair market value is a period of ineligibility for payment of long term care services.
DHS Regulation § 0384.40 establishes a rebuttable presumption of prohibited transfer:
 Transfers of assets for less than FMV are presumed to be for the purpose of establishing eligibility for nursing facility payment. The applicant can rebut the presumption by making a satisfactory showing that the transfer was for some other purpose. . . The applicant/recipient should be assisted in obtaining information to rebut the presumption when necessary; however, the burden of proof rests with the applicant/recipient. (Emphasis added.)
Thus, Mrs. Jordan may rebut the presumption that a transfer for less than fair market value is for the purpose of obtaining medical assistance, but Mrs. Jordan has the burden of proof to show that her transfer was made for another purpose. However, analogous to42 U.S.C. § 1396p(c)(2), DHS Regulations § 0384.35 provides exceptions in specific circumstances, despite the presumption that the purpose of an institutionalized individual or the individual's spouse making a transfer for less than market value is to establish Medicaid eligibility. One exception provided in § 0384.35 stipulates that
 [a] penalty period is not imposed when. . . [t]he individual can prove the transfer was exclusively for some purpose other than to qualify for Medical Assistance. . . . *Page 9 
Even when an applicant is unable to establish that the transfer falls within an exception, the DHS Regulations provide additional means by which to rebut the presumption that a transfer is prohibited. Section 0384.45 provides that "[a]n individual may rebut the agency's presumption that assets were transferred in order to become eligible for nursing facility payments" when one or more factors are present. One such factor is
 [a] traumatic onset (e.g. traffic accident) of disability or blindness after transfer of the resource. If the applicant/recipient states that AFTER the transfer s(he) experienced a traumatic onset of disability which could not have been foreseen at the time of transfer, and which resulted in the inability to provide for his/her own support, consider the applicant's/recipient's age, medical history, and medical condition at the time of transfer as well as his/her financial situation. . . .
 B. The non-attorney hearing officer.
Mrs. Jordan asserts that the agency's decision against her was made by a non-attorney based on his erroneous interpretation of law, not facts, and is therefore reviewable de novo by the Superior Court. Because this Court is mindful that the agency's hearing officers are specially designated under regulatory statutes to preside at a formal agency hearing, at which evidence is taken, the fact that the hearing officer was a non-attorney employee of the agency does not affect the validity of the agency decision. While this Court will not substitute its judgment for that of DHS with respect to the credibility of Mrs. Jordan's witnesses or the weight of the evidence on questions of fact, it will review questions of law de novo. Ctr. For Behavioral Health v.Barros, 710 A.2d at 684. *Page 10 
While many may prefer that hearing officers be attorneys, the applicant has not demonstrated that non-attorney hearing officers constitute an error of law.
C. The burden of proof.
It is uncontested that Mrs. Jordan's transfer of 190 Spring Street was for less than fair market value. "Transfers of assets for less than FMV are presumed to be for the purpose of establishing eligibility for nursing facility payment" Rhode Island DHS Code of Rules § 0384.40 (2000). Hence, the transfer is presumed to have been for the purpose of establishing eligibility for Medical Assistance. Indeed the regulatory framework is quite clear that the burden of proof is firmly set upon the applicant.[1] *Page 11 
In the context of an administrative appeal, it is the province of the hearing officer to make initial findings of fact. The scope of appellate review by this Court is explicitly limited by statute:
§ 42-35-15. Judicial review of contested cases
 (a). . .
 (f) The review shall be conducted by the court without a jury and shall be confined to the record. . . .
 (g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error or law;
 (5) Clearly erroneous in view of the reliable, probative, and Substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. *Page 12 
 Our high court has recently held
 The Superior Court's review of an administrative decision is limited to a determination of whether or not legally competent evidence exists in the record to support the agency's decision. . . . The Superior Court must defer to the agency's determinations regarding questions of fact. Town of Burrillville v. Rhode Island State Labor Relations Board, 921 A.2d 113; 2007 R.I. LEXIS 47; (R.I., May 4, 2007), citations omitted.
Where the Superior Court has exceeded the scope of its statutory appellate role, the high court has stepped in. Nickerson v.Reitsma, 853 A.2d 1202, 1206 (R.I. 2004). In a Medicaid case, the high court summarized:
 Our review of administrative decisions, including those of DHS, is prescribed by § 42-35-15, and that review "is confined to a determination of whether there is any legally competent evidence to support the agency's decision," Environmental Scientific Corp. v. Durfee, 621 A.2d 200, 208 (R.I. 1993) (citing Barrington School Committee v. Rhode Island State Labor Relations Board, 608 A.2d 1126, 1138 (R.I. 1992)), and further, whether the decision was otherwise occasioned by error of law. Star Enterprises v. DelBarone, 746 A.2d 692, 695 (R.I. 2000). This Court does not substitute its judgment for that of the agency concerning the credibility of witnesses or the weight of the evidence concerning questions of fact. Technic, Inc. v. Rhode Island Department of Employment and Training, 669 A.2d 1156, 1158
(R.I. 1996). The findings of fact of the administrative hearing officer that Mary and her deceased husband were the source of the funds, that Mary had unrestricted access to those funds and that Helen and Kevin were added to the accounts for Mary's convenience, are all factual determinations that are not reviewable by this Court. Tierney v. Department of Human Servs., 793 A.2d 210, 212-213 (R.I. 2002)
Under the general rule set forth in DHS Regulation § 0384.20, Mrs. Jordan was subject to a penalty period for transferring one-half ownership of the 190 Spring Street property to her son for less than FMV on July 1, 2005, which was less than three months before Mrs. Jordan was admitted to Shady Acres Nursing Home in October 2005 and subsequently applied for medical assistance. (Mrs. Jordan's Br. at 3.) Under DHS *Page 13 
Regulation § 0384.40, it is Mrs. Jordan's burden of proof to rebut the presumption that her transfer was prohibited.
D. Evidence presented.
The applicant's burden is substantial. She must significantly rebut the regulatory presumption.
Mrs. Jordan asserts that she could not have presented more convincing evidence than Attorney Toscano's letter. In its decision, DHS expressed concern as to the "time line" on which Mrs. Jordan entered a nursing home, which was within three months of the date she transferred her property. (DHS Decision at 7.) The hearing officer also expressed "concern as to the accuracy of [Attorney Toscano's] letter," noting that "[t]he letter from the attorney who prepared the Quitclaim deed fails to mention the fact that Mrs. Jordan's son attended the meeting." (Id.) In doing so, the hearing officer was obviously concerned with the credibility of the witnesses, and the document, and properly assessed that concern and assigned less weight to that evidence.
The hearing officer accepted the unsworn letter into evidence pursuant to the R.I.G.L. section 42-35-10 (a)[2] as a full exhibit. By doing so, the hearing officer was not blindly required to accept its conclusions. The hearing officer is charged with the *Page 14 
responsibility of making credibility determinations and assessing the value of competing evidence.
Our high court has discussed the significant role of the hearing officer in determining the credibility of witnesses at administrative hearings. In a case heard by the Department of Environmental Management, the court discussed the function of the hearing officer, the director finalizing the decision at the agency level, and the court reviewing the decision:
 We are not privileged to assess the credibility of witnesses and may not substitute our judgment for that of the trial examiner concerning the weight of the evidence on questions of fact. Liberty Mutual Insurance Co. v. Janes, 586 A.2d 536, 537 (R.I. 1991). We do, however, retain the power to review all questions of law. Hometown Properties, Inc. v. Rhode Island Department of Environmental Management, 592 A.2d 841, 843 (R.I. 1991). This function permits us to determine whether there is any legally competent evidence to justify the conclusions of the reviewing court and agency. Barrington School Committee, 608 A.2d at 1138. Legally competent evidence is indicated by the presence of "some" or "any" evidence supporting the agency's findings. Sartor v. Coastal Resources Management Council, 542 A.2d 1077, 1082-83 (R.I. 1988). Should we find the record deficient, "an administrative decision can be vacated if it is clearly erroneous in view of the reliable, probative, and substantial evidence contained in the [**23] whole record." Costa v. Registrar of Motor Vehicles, 543 A.2d 1307, 1309 (R.I. 1988).
 * * * The APA requires us to search the record for substantial evidence. Yet in our inquiry we cannot overlook the body of law that elevates the fact finder's role when credibility is in issue. In light of our discussion the equation we use to determine whether substantial evidence exists factors in both credibility determinations and the corresponding deference to the hearing officer's findings.
 We find that the DEM's final decision fails to rest upon sufficient evidentiary support to overcome the deference it must accord the hearing officer's decision. The director should give great deference to the hearing officer's findings and conclusions unless clearly wrong. Environmental Scientific Corp. v. Durfee, 621 A.2d 200, 208-209 (R.I. 1993). *Page 15 
Similar to a trial judge, the hearing officer is receiving evidence and then assigning appropriate weight to it. At first blush, these two roles may be confused but should not be. In determining whether the evidence is competent, the officer is considering issues of law. In weighing the evidence and determining credibility, the hearing officer is sitting as the finder of fact. Significant deference is afforded to the finder of fact who views the witnesses and is called upon to determine the validity of the statements made. The role of the finder of fact is paramount in our law. "The right to confrontation is basically a trial right. It includes both the opportunity to cross-examine and the occasion for the jury to weigh the demeanor of the witness." Barber v. Page, 390 U.S. 719, 725
(U.S. 1968).
Other decisions of Rhode Island Supreme Court emphasize the deference afforded to the fact-finder, "the ultimate decision-maker owes deference to the recommendations of the first-tier decision-maker only if those recommendations were based on determinations of witness credibility."Johnston Ambulatory Surgical Assocs. v. Nolan, 755 A.2d 799, 807 (R.I. 2000). "We defer to the commission's findings of fact. . . . [W]e shall not "disturb an order promulgated in the exercise of [the commission's] administrative discretion unless the commission clearly exceeds its statutory authority or acts illegally, arbitrarily, or unreasonably."South County Gas Company v. Burke, 551 A.2d. 22, 24 (1988). "[A] hearing officer with `substantial expertise in matters falling within his or her agency's jurisdiction' should be able to judge whether evidence offered is trustworthy, credible, and probative regardless of whether it is hearsay. "Foster-Glocester Reg'l School Committee, 854 A.2d at 1019 (quoting DePasquale, 599 A.2d at 316). The Supreme Court has consistently relied on hearing officers' "ability to exercise *Page 16 
prudence in considering evidence and the reliability that must condition its admissibility." DePasquale, 599 A.2d at 317.
Clearly, the hearing officer was weighing evidence and making credibility determinations. This Court may not substitute its judgment for that of DHS with respect to the weight of evidence. R.I.G.L. section42-35-15(g). The hearing officer, in weighing evidence concluded that neither Attorney Toscano's letter nor the testimony of Mr. Jordan overcame the presumption. This was a reasonable determination considering the entirety of the agency decision.
Note that the hearing officer did not have the testimony of the applicant, Sheila Jordan. While an applicant's testimony may be rare in Medicaid application hearings, the applicant's intent at the time of the property transfer is pivotal. Without her testimony or any other evidence from her, the hearing officer was left to draw inferences from the attorney's letter and the son. They may not have known Mrs. Jordan's true purpose in making the conveyance. The applicant elected not to introduce the testimony of the attorney, but to submit a letter only. While such evidence may be allowed, the applicant accepted the risk that the letter would be less convincing.
As a whole, the agency's findings are not so completely devoid of competent evidentiary support in the record, or by the reasonable inferences drawn from it, to render the findings made by the hearing officer not controlling upon this Court. Milardo v. Coastal ResourcesManagement Council, 434 A.2d 266, 270 (1981); Millerick v. Fascio,120 R.I. at 9, 384 A.2d at 601; contra Johnson v. Guhl, 91 F.Supp.2d 754,778 (D.N.J. 2000) (where "the corpus of the trust [was] considered a transfer of assets for less than fair market value, which would normally trigger a look-back period, but in this case, [did] *Page 17 
not because it was uncontested that the transfer was for the `sole benefit of' the community spouse").
Mrs. Jordan further contends that the hearing officer erred in considering the traumatic onset of disability in DHS Regulation § 0384.45 as a requirement for an exception to the ineligibility period. DHS Regulation § 0384.45 is not a requirement for exemption from the ineligibility period: it is merely an additional means by which to rebut the presumption of ineligibility for Medicaid if no other exception is available. See Rhode Island DHS Code of Rules § 0384.45 (providing that by establishing traumatic onset of disability, "[a]n individualmay rebut the agency's presumption that assets were transferred in order to become eligible for nursing facility payments" (Emphasis added.)). The hearing officer did not base his decision on an incorrect requirement that DHS Regulation § 0384.45 be met. Rather, the hearing officer considered the possibility that Mrs. Jordan suffered from a traumatic onset of disability or blindness after the transfer of her property as only one factor that may have rebutted the presumption of Mrs. Jordan's ineligibility.
The agency's findings regarding Mrs. Jordan's medical assistance eligibility are not so completely devoid of competent evidentiary support in the record, or by the reasonable inferences drawn from it, to render the findings made by the hearing officer non-controlling upon this Court. Milardo v. Coastal Resources Management Council,434 A.2d 266, 270 (R.I., 1981); Millerick v. Fascio, 120 R.I. at 9,384 A.2d at 601 (1978). Therefore, the agency did not abuse its discretion or make an error of law in denying Mrs. Jordan medical assistance benefits due to ineligibility because of transfer of assets. *Page 18 
 IV. Conclusion
After a review of the entire record, this Court finds that the Agency's decision is supported by reliable, and probative, and substantial evidence and is not affected by error of law. The Agency did not abuse its discretion or act in violation of statutory provisions. The substantial rights of the Plaintiff have not been prejudiced.
The decision of the Agency is affirmed. Counsel for DHS shall submit an appropriate order for entry.
[1] It is instructive to view the various regulations in detail:
0384.40 RESPONSIBILITIES.
Field staff responsibilities pertaining to transfer of assets are the following: FIRST. . . THIRD
Transfers of assets for less than FMV are presumed to be for the purpose of establishing eligibility for nursing facility payment. The applicant can rebut the presumption by making a satisfactory showing that the transfer was for some other purpose.
If the applicant/recipient wishes to rebut the presumption, the agency representative shall explain that it is the applicant/recipient's responsibility to make a satisfactory showing that the assets were transferred exclusively (i.e., only) for some other reason. The information furnished by the applicant/recipient should cover, but need not be limited to, the following factors:
• The purpose for transferring the asset;
• The attempts to dispose of the asset for FMV;
• The reasons for accepting less than FMV;
• The applicant/recipient's relationship, if any, to the person(s) to whom the asset was transferred; The applicant/recipient should be assisted in obtaining information to rebut the presumption when necessary; however, the burden of proof rests with the applicant/recipient.
FOURTH
Once the LTC Administrator determines that an asset was transferred for less than fair market value and the resultant uncompensated value, the agency representative will determine the period of ineligibility for nursing facility payment.
FIFTH. . .
The responsibilities of the LTC Administrator are:
FIRST. . .
THIRD
Evaluate the individual's rebuttal of the agency's presumption that resources were transferred in order to become eligible for nursing facility payments, and consult with the Office of Legal Counsel, as necessary.
0384.45 REBUT OF PRESUMP OF PROH TRANS
An individual may rebut the agency's presumption that assets were transferred in order to become eligible for nursing facility payments.
The presence of one or more factors may indicate that the asset was transferred exclusively for some purpose other than establishing eligibility for nursing facility payments.
These factors are:
• A traumatic onset (e.g. traffic accident) of disability or blindness after transfer of the resource.
If the applicant/recipient states that AFTER the transfer s(he) experienced a traumatic onset of disability
The applicant/recipient may submit whatever medical documentation s(he) wishes to substantiate his/her claim.
• Inability to dispose of the asset for fair market value.
The applicant/recipient must provide evidence of attempts to dispose of the asset for fair market value, as well as evidence to support the value at which the asset was disposed. . Diagnosis of previously undetected disabling condition;
• Unexpected loss of other resources (including deemed resources) which would have precluded MA eligibility;
• Unexpected loss of income (including deemed income) which would have precluded MA eligibility;
• Total countable resources that would have been below the resource limit at all times from the month of transfer through the present month even if the transferred resource had been retained;
• Court-ordered transfer.
[2] The rules of evidence in administrative procedures are less formal
 § 42-35-10. Rules of evidence — Official notice
 In contested cases:
(a). . . The rules of evidence as applied in civil cases in the superior courts of this state shall be followed; but, when necessary to ascertain facts not reasonably susceptible of proof under those rules, evidence not admissible under those rules may be submitted (except where precluded by statute) if it is of a type commonly relied upon by reasonably prudent men in the conduct of their affairs. . . . Subject to these requirements, when a hearing will be expedited and the interests of the parties will not be prejudiced substantially, any part of the evidence may be received in written form. *Page 1