[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
Appellants Ben L. LaPorte and Mary M. LaPorte (the LaPortes) challenge the December 30, 2004 decision of the Rhode Island Department of Human Services (DHS). The LaPortes appeal the DHS's decision to expand the community spouse resource allowance without factoring in the couple's non-income-yielding assets. In addition, the LaPortes challenge the DHS's denial of retroactive eligibility for medical assistance. Jurisdiction is pursuant to G.L. 1956 § 42-35-15.
 FACTS AND TRAVEL
In March of 2004, Ben LaPorte (Ben) was institutionalized as a result of infections in his feet. (Tr. at 5.) Ben's Medicare payments ceased on July 11, 2004, and on September 3, 2004, he filed an application for medical assistance (MA) with the DHS. Id. Finding that he had excess resources in the amount of $26,566.57, the DHS denied Ben's application on October 13, 2004. (Tr. at 2.) At that time, the DHS concluded that Mary LaPorte (Mary) had a community spouse resource allowance (CSRA) of $28,424, based on the couple's total joint resources as of March 1, 2004. Id.
Subsequently, the LaPortes filed an administrative appeal and requested an administrative hearing pursuant to DHS Manual § 0380.40.35. See
Exhibit 6, Request for a Hearing. In their request, the LaPortes proposed that the CSRA should be raised to $56,848, and that Ben should be permitted to allocate a portion of his income and resources to Mary in order to raise her monthly CSRA to $1,677.49, which is the minimum monthly maintenance needs allowance (MMMNA). In addition, the LaPortes contended that Ben should be eligible for retroactive medical assistance according to the provisions of DHS Policy Manual § 0310.
A properly noticed hearing was held on December 15, 2004. At the hearing, Lillian Jacquard (Jacquard), Ben's attorney, testified that the LaPortes' total joint resources as of March 1, 2004 (the month in which Ben was institutionalized) were $56,848.01, and the spousal share was calculated to be $28,424. (Tr. at 5.) Furthermore, Jacquard testified that the total assets for the first day of September, the month of Ben's application, were $58,990.57. Id. Jacquard also stated that Mary's income from the current CSRA was insufficient to meet the MMMNA, and that under DHS Regulation 0392.15.20.05, Ben should be able to allocate $420.63 of his income to Mary in order to reach the MMMNA. (Tr. at 3.)
During the hearing, Jacquard also testified that Ben should be eligible for retroactive medical coverage for July and August, regardless of whether he is found to be eligible for September coverage. (Tr. at 13-14.) Jacquard also stated that the LaPortes have two checking accounts that do not produce income, the total balance of which was $9,844.13 as of September 1, 2004. (Tr. at 7.)
On December 30, 2004, in a written Administrative Hearing Decision, a DHS appeals officer authorized the expansion of Mary's CSRA to include the couple's total income producing assets while maintaining that the $9,844.13 that was held in non-income-generating checking accounts could not be attributed to her. Furthermore, the appeals officer concluded that Ben's retroactive MA eligibility for July and August could not be established because his non-income-producing resources exceeded $4,000 during both of those months.
The LaPortes have filed a timely appeal to this Court, arguing that the non-income-producing assets from their checking accounts were erroneously omitted from the calculation of the expansion of the CSRA. The LaPortes request that this Court allocate all of the couple's total joint resources, less $4,000, to Mary for her support. In addition, the LaPortes request that the Court approve retroactive coverage for Ben's medical expenses for the months of July and August.
 STANDARD OF REVIEW
The Court's review of a decision of the DHS is controlled by G.L. 1956 § 42-35-15(g), which provides for review of a contested agency decision as follows:
 "(g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decision are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
"When reviewing an agency decision pursuant to § 42-35-15, the Superior Court sits as an appellate court with a limited scope of review." MineSafety Appliances Co. v. Berry, 620 A.2d 1255, 1259 (R.I. 1993). Accordingly, the reversal of an agency's decision by this Court is only proper if there is a lack of substantial evidence to support the agency's decision. Newport Ship Yard v. Rhode Island Comm'n for Human Rights,484 A.2d 893, 897 (R.I. 1984). "Substantial evidence as used in this context means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means in amount more than a scintilla but less than a preponderance." Caswell v. George Sherman Sand Gravel Co., 424 A.2d 646, 647 (R.I. 1981). This Court cannot substitute its judgment for that of the agency, "even in situations in which the court might be inclined to view the evidence differently and draw inferences different from those of the agency under review." RhodeIsland Pub. Telecommunications Auth. v. Rhode Island State LaborRelations Board, 650 A.2d 479, 485 (R.I. 1994) (citing Barrington SchoolCommittee v. Rhode Island State Labor Relations Board, 608 A.2d 1126, 1138
(R.I. 1992)). In circumstances in which an agency is interpreting its own regulations, this Court must apply a "deferential standard" in reviewing the agency's decision. See Pawtucket Power Assocs. Ltd. Partnership v.Pawtucket, 622 A.2d 452, 457 (R.I. 1993) (holding that the judgment of an administrative agency "was entitled to deference and has great persuasive force").
 THE DEPARTMENT OF HUMAN SERVICES
Medicaid is a federally funded medical assistance program established under Title XIX of the federal Social Security Act (SSA). The SSA authorizes each individual state "to furnish medical assistance on behalf of families . . . whose income and resources are insufficient to meet the costs of necessary medical services. . . ." 42 U.S.C. § 1396 et seq. The DHS, a department within the executive branch of the state government, is authorized to carry out the supervision and management of both state and federally funded public financial assistance programs, including Medicaid, under G.L. 1956 § 42-12-1 et seq.
Section 40-8-1(c) of the Rhode Island General Laws establishes the commitment of the State of Rhode Island to provide financial assistance to medically needy individuals pursuant to the provisions of the federal SSA. The DHS governs the MA program through applying the standards of eligibility set out in G.L. 1956 § 40-8-3. Eligibility determinations, as regulated by the DHS, must comply with the SSA and must be approved by the federal government in order for the program to receive federal funding. See G.L. 1956 § 40-8-5; Schweiker v. Gray Panthers, 453 U.S. 34,37 (1981).
 MEDICAL ASSISTANCE ELIGIBILITY
The Rhode Island DHS Policy Manual sets out the procedure whereby an individual's eligibility for medical assistance benefits is determined. Section 0338.05 of the Manual states that in order to be eligible for assistance, an individual cannot have countable income and resources in excess of $4,000. Under DHS guidelines, a countable resource is one that can be made available to be used for an individual's medical expenses. DHS Manual § 0380.10. In the case of a married couple in which one spouse must be institutionalized for medical purposes, the DHS assesses the couple's joint resources and allocates a CSRA to the spouse remaining in the community prior to determining medical assistance eligibility. To calculate the CSRA, the DHS must first determine the couple's total joint resources as of the first day of the first month of institutionalization and then calculate the spousal share, which is equal to one-half the value of the couple's total joint resources. DHS Manual §§ 0380.40.05, 0380.40.10. The CSRA is then determined to be the spousal share not exceeding $95,100. DHS Manual § 0380.40.15.
In circumstances in which the community spouse's monthly income falls under the MMMNA, the spouse is entitled to a fair hearing under DHS Manual § 0380.40.35. The hearing enables the spouse to increase her share of the total joint assets and to receive income from the institutionalized spouse.
The LaPortes claim that the DHS erroneously computed their total joint resources and subsequently erred in the allocation of Mary's CSRA. In its decision, the DHS found that the couple's non-income-producing assets should not be allocated to the CSRA, but rather should be made available for Ben's medical expenses.
Section 0380.40.05 of the DHS Manual states that the couple's combined resources, presumably including any non-income-producing assets, must be taken into account in computing the total joint resources. This section of the Policy Manual also requires that the couple's total joint resources be divided in half, but it does not provide guidelines or direction for how the assets should be split. The United States Supreme Court has held that "an agency's construction of its own regulations is entitled to substantial deference." Lyng v. Payne, 476 U.S. 926, 939
(1986). Therefore, this Court must defer to the agency's interpretation of § 0380.40.05 as long as it is reasonable and in conformance with the purpose of the regulation. Martin v. Occupational Safety and Health ReviewComm'n, 499 U.S. 144, 150 (1991); see also Gallison v. Bristol Sch.Comm., 493 A.2d 164, 166 (R.I. 1985) ("[W]here the provisions of a statute are unclear or subject to more than one reasonable interpretation, the construction given by the agency charged with its enforcement is entitled to weight and deference as long as that construction is not clearly erroneous or unauthorized."). Because there is an absence of statutory direction as to how the total joint resources should be allocated between the spouses, this Court defers to the hearing officer's reasonable interpretation of the statute. See Labor ReadyNortheast, Inc. v. McConaghy, 849 A.2d 340, 244 (R.I. 2004) (holding that the court must give deference to an agency's interpretation of a statute as applied to a particular factual situation as long as it is not clearly erroneous).
The LaPortes contend that the DHS's decision to exclude non-income-producing assets from the computation of the couple's joint resources reduced the CSRA and resulted in Ben's being ineligible for medical assistance was clearly erroneous. The purpose of the CSRA is to ensure that an individual whose spouse is institutionalized is protected from "pauperization." Wis. Dep't of Health Family Servs. v. Blumer,534 U.S. 473, 480 (2002). In this case, because Mary's income fell below the MMMNA, the hearing officer properly allowed the allocation of additional income-producing resources to Mary from the couple's total joint resources. In addition, Ben was permitted to transfer a portion of his monthly income to Mary in order to bring Mary's monthly income up to the MMMNA, pursuant to DHS Manual § 0392.15.20. Section 0380.40.35 provides that: "[t]he additional resource(s) above the CSRA which may be protected under this section of the Social Security Act must be income producing." In view of this provision, the hearing officer decided that $9,844.13 of the total joint resources, the only portion not generating income, would remain available to Ben to pay for his medical expenses.[1]
The DHS possesses federal authorization to revise the community spouse's CSRA through 42 U.S.C. § 1396r-5(e)(2)(C), which provides that "there shall be substituted, for the community spouse resource allowance under subsection (f)(2), an amount adequate to provide such a minimum monthly maintenance needs allowance." While this provision does not decisively indicate whether the resources transferred to the community spouse must be income-generating, it would be reasonable to conclude that "since the purpose of the transfer of resources is to provide sufficient income to meet the monthly maintenance needs of the community spouse, the resources that are transferable must be resources that will provide a regular stream of income to the community spouse." O'Callaghan v.Commissioner of Social Services, 53 Conn. App. 191, 205 (1999). Therefore, the provision of DHS Manual § 0380.40.35 that specifies that the resources transferred must be income-producing is not in contravention of the legislative intent of the federal statute. The Third Circuit Court of Appeals has recognized the dual intentions of the federal government in implementing the medical assistance program:
 "Because Medicaid serves the purpose of providing necessary medical services for both the indigent and the elderly, a related goal . . . is to preclude couples who possessed substantial resources from qualifying for Medicaid. . . . [The SSA] seeks to achieve a balance between spousal impoverishment and apportioning medical costs appropriately." Cleary by Cleary v. Waldman, 167 F.3d 801, 805 (3rd Cir. 1999).
Because transferring the resources that are in non-income-producing checking accounts to Mary would not provide her with any additional monthly income, it would thwart the legislative purpose of the MA policy to do so.
To prevent the depletion of a couple's resources, DHS Manual § 0382.05 provides the opportunity for conversion of resources under the first moment of the month rule. Pursuant to this provision, individuals who are eligible, or who are seeking eligibility, for medical assistance may change the form of their countable resources (i.e., by closing a savings account or purchasing a new resource). Under § 0382.05, the LaPortes have an opportunity to convert the resources they hold in non-income producing checking accounts into income-generating assets. Upon doing this, the change in countable resources would be reflected in the following month's resource determination. Consequently, by transferring the checking account resources into an income-producing asset, Ben can qualify for medical assistance in the month following the transfer. The DHS's inclusion of this provision in the Policy Manual reflects the agency's intent to allow an applicant to maintain his resources in the most beneficial form possible. Accordingly, the Court, in its review of the record, finds the DHS's conclusion that the LaPortes' non-income generating assets be allocated to Ben is not in excess of its statutory authority or arbitrary or clearly erroneous.
 DETERMINATION OF RETROACTIVE ELIGIBILITY
The LaPortes further argue that Ben should not have been denied retroactive medical assistance coverage because the DHS improperly denied eligibility for the month of September. In addition, the LaPortes contend that Ben should be eligible for retroactive coverage regardless of whether his September application was denied. The DHS maintains, however, that Ben is ineligible for retroactive coverage for July and August because his non-income-generating assets exceeded $4,000 for both of those months.
Section 0310.05 of the DHS Manual provides that individuals who apply for medical assistance have the ability to request retroactive eligibility for up to three months prior to the month of medical assistance application. In order to be eligible for retroactive coverage, "[r]esources must be within the applicable resource limit as of the first day of each month for which eligibility is being determined." DHS Manual § 0310.15. However, "[i]ndividuals who are denied SSI, FIP, or MA in the month of application may be eligible for retroactive coverage." DHS Manual § 0310.05. Therefore, even though Ben was found to be ineligible for medical assistance for the month of September, the LaPortes correctly assert that the DHS could still consider his eligibility for up to three months prior to that.
The DHS's reasoning for denying retroactive coverage for July and August indicates that the agency did indeed consider Ben's eligibility for retroactive assistance, despite the fact that he was ineligible for September coverage. The DHS's conclusion was that Ben was not eligible for coverage in July or August because "the non-income yielding resources exceeded agency limits during the retro period. Agency retroactive eligibility criteria do not allow reduction of resources during a retroactive period." See Administrative Hearing Decision. The evidence in the record that warrants the DHS's conclusion is information that Ben's attorney, Jacquard, provided prior to the hearing but before the Board's decision. The computations of interest income for the months of July and August have been provided in the record as Exhibits XI and XII, respectively. The tables provided show that the LaPortes had a balance of $7676.15 and $7455.97 in non-income producing checking accounts for those respective months. Therefore, the DHS's conclusion that Ben was ineligible for medical assistance for those months comports with the eligibility criterion that he have not more than $4,000 in countable income and resources to be eligible for assistance. Cf. Tierney v. Dep'tof Human Servs., 793 A.2d 210, 212 (R.I. 2002) (holding that an individual was ineligible for medical assistance because resources in joint bank accounts which she had unrestricted access to exceeded the $4,000 eligibility limit). Accordingly, the decision of the DHS to deny retroactive coverage to Ben was supported by the reliable, probative, and substantial evidence presented on the record and was not clearly erroneous.
 ATTORNEY'S FEES
Finally, the LaPortes request attorney's fees pursuant to the Equal Access to Justice Act, G.L. 1956 § 42-92-1 et seq. Under § 42-92-3, the LaPortes are entitled to recover reasonable attorney's fees if they are deemed to be the prevailing party, unless the position of the agency, although not necessarily correct, is substantially justified. Taft v.Pare, 536 A.2d 888, 892 (R.I. 1988). However, because this Court has found that the DHS is the prevailing party in this case, the LaPortes' request for attorney's fees is necessarily denied.
 CONCLUSION
Upon review of the entire record, this Court finds that the DHS's calculation of Mary's CSRA and denial of retroactive eligibility were not in excess of the statutory authority of the agency or made upon unlawful procedure, and were not clearly erroneous in view of the reliable, probative, and substantial evidence of the record. Furthermore, the agency decision was not arbitrary or capricious or characterized by an abuse of discretion or affected by error of law. Substantial rights of the LaPortes have not been prejudiced. Consequently, the December 30, 2004 decision of the Department of Human Services is affirmed. With respect to all of the above, Counsel shall prepare the appropriate judgment for entry.
[1] DHS Manual § 0382.15.10.10 states: "Whenever the applicant is a joint account holder who has unrestricted access to the funds in the account, ALL of the funds in the account are PRESUMED to be the resources of the applicant or deemor."